UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| LEE ELY, *individually and as the surviving spouse and next of kin of Penny Christine Ely, deceased*, and CHARLES NELSON<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF DAYTON, TENNESSEE, *et al.*<br><br>    Defendants. | Case No. 1:13-CV-168<br><br>Judge Curtis L. Collier |
| LORELLE TUCKIER, *individually and as the surviving spouse and next of kin of Terence Eugene Tuckier, Jr.*<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF DAYTON, TENNESSEE, *et al.*<br><br>    Defendants. | Case No. 1:13-CV-170 |

## **M E M O R A N D U M**

Before the Court are cross motions for summary judgment filed by Plaintiffs and Defendants in these related cases.[1] Plaintiffs Lee Ely and Charles Nelson ("Ely Plaintiffs") filed a motion for summary judgment (Ely Court File No. 30). Plaintiff Lorelle Tuckier ("Tuckier") also filed a motion for summary judgment (Tuckier Court File No. 21). Defendants J.C. Byrd

---

[1] The Court will cite to documents in the docket of Ely v. City of Dayton et al., 1:13-cv-168, using (Ely Court File No. __) and documents from Tuckier v. City of Dayton et al., 1:13-cv-170, using (Tuckier Court File No. __). When citing to particular depositions included within both case files, the Court will simply cite to the document itself. For example, the Court will cite to the deposition of Charles Nelson as follows (Nelson Dep.__).

("Byrd"), the City of Dayton, Tennessee, Eric Ewton ("Ewton"), and Bruce Spradling ("Spradling") (collectively "Defendants") responded (Ely Court File No. 42, Tuckier Court File No. 33) and filed a motion for summary judgment in each case (Ely Court File No. 40, Tuckier Court File No. 31). Defendants also replied to Tuckier's response (Tuckier Court File No. 34). For the reasons set forth below, the Court will **GRANT** Defendants' motions (Ely Court File No. 40, Tuckier Court File No. 31) and **DENY** Plaintiffs' motions (Ely Court File No. 30; Tuckier Court File No. 21) in both cases and enter summary judgment in favor of Defendants.

I.  BACKGROUND

On May 26, 2012, three officers of the Dayton Police Department, Byrd, Ewton, and Spradling, responded to a 911 emergency call from the Holiday Inn Express at 2650 Rhea County Highway, in Dayton, Tennessee. Upon arrival, the officers learned that there was no emergency; rather, a room phone had fallen off the hook and automatically dialed the emergency number (Lee Ely Dep. 60; Byrd Dep. 10–11). Also at the Holiday Inn that day was the local chapter of the Defiant Motorcycle Club. The group of at least 40 was preparing to go on a group ride that afternoon (Lee Ely Dep. 65). It is unclear who approached whom, but it is undisputed that the officers agreed to provide an escort for the motorcyclists for at least a portion of their ride (Lee Ely Dep. 62–63; Byrd Dep. 12). The plan was to turn right onto U.S. Highway 27 with Ewton blocking northbound traffic so that the riders could all exit the hotel lot (Byrd Dep. 15, 18). Spradling would drive ahead and block each intersection as the group approached with Byrd leading the group of motorcycles (Byrd Dep. 18). When Byrd and the group arrived, Spradling would move ahead to begin blocking the next intersection (*id.*). After all the riders had entered the highway, Ewton would fall in and pull up the rear of the group (*id.* at 18–19).

2

The ride began as planned, but due to some confusion, some riders were not immediately ready to follow Byrd out of the hotel and the motorcycle group became strung out leaving some gaps between groups of riders (Lee Ely Dep. 67). At an intersection known as the Lowe's intersection, one of these groups of riders—which included Terence Tuckier, his passenger Penny Ely, and Charles Nelson—stopped briefly when a truck looked like it might be about to enter the intersection (Nelson Dep. 63–64). This momentary delay caused the group to fall further behind, and they sped up to catch the main group (Nelson Dep. 66).

Further north, at the intersection of Highway 27 and Black Oak Ridge Road, Larry Hammons was stopped at the traffic light in the left turn lane of Southbound Highway 27 in a white Pontiac (Hammons Dep. 10). He watched a group of motorcycles pass by with a police vehicle escorting (*id*. at 10–11). The signal turned to a green arrow and, not seeing the approaching group of motorcycles, Hammons turned left into the intersection (*id*. at 11). Terence Tuckier collided with Hammons's vehicle, and both he and his passenger, Penny Ely, were killed (Hammons Dep. 22; Nelson Dep. 70–71). Charles Nelson slid through the intersection making contact with some of the accident debris (Nelson Dep. 70–71). Tuckier and Ely's survivors and Nelson brought this lawsuit against the officers and the City of Dayton alleging that the conduct of the officers deprived Plaintiffs of their Fourteenth Amendment right to Due Process.

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact

3

exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2–3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. ANALYSIS

Plaintiffs argue that Defendants violated their substantive due process rights under the Fourteenth Amendment and seek damages pursuant to 42 U.S.C. § 1983. Defendants argue that this case does not allege a due process violation at all. "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). The Sixth Circuit has recognized two exceptions to the rule announced in *Deshaney*: the special relationship exception and the state-created danger exception. *Jones v. Reynolds*, 438 F.3d 685, 690 (6th Cir. 2006). Plaintiffs argue that this case could proceed under either theory. Defendants disagree. The Court will address each in turn.[2]

### A. Special Relationship

In *Deshaney*, the Supreme Court recognized "that when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Deshaney*, 489 U.S. at 199–200. Clarifying the level of restraint necessary, the Court noted "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the . . . Due Process Clause." *Id*. at 200. The Sixth Circuit has made clear that this exception applies only when the State places an individual "in custody or otherwise

---

[2] Plaintiffs appear to assert a failure to train theory as a potential third theory of a constitutional violation. However, Defendants correctly point out that the failure to train theory is a theory of imputing § 1983 liability to supervisory actors rather than a separate exception to the *DeShaney* rule. Because the Court concludes that there has been no constitutional deprivation, the Court need not address this theory.

5

restrained her liberty in a way that prohibited her from taking care of herself." *Jones*, 438 F.3d at 690. Custody, as defined by the Sixth Circuit, is the "intentional application of physical force and show of authority made with the intent of acquiring physical control." *Cartwright v. City of Marine City*, 336 F.3d 487, 492–933 (6th Cir. 2003) (quoting *Ewolski v. City of Brunswick*, 287 F.3d 492, 506 (6th Cir. 2002)).

The undisputed facts do not show anything approaching a custodial relationship. It is not clear if the individual officers interacted with those injured in this case in any way at all. They were under no state compulsion to do anything at all. This theory of liability is thus unavailing.

  **B.**  **State Created Danger**

The state-created danger standard imposes a "demanding standard for constitutional liability." *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 913 (6th Cir. 1995). "To show a state-created danger, plaintiff must show: 1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; 2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and 3) the state knew or should have known that its actions specifically endangered the plaintiff." *Cartwright*, 336 F.3d at 493.

In applying this test, the Court is cognizant that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney*, 489 U.S. at 195. "[I]t is not enough to show a causal connection between state action and an act of private violence." *Ewolski*, 287 F.3d at 510. A state may impose upon its own officers whatever affirmative duty of care it may wish, but the Constitution is not to be construed to impose those duties upon them by way of the Fourteenth Amendment. *Id*. at 202–03. The state's duty "arises not . . . from [the state's] expressions of

6

intent to help the individual, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* at 200; *see also id.* at 201 (noting that "the State does not become the permanent guarantor of an individual's safety by having once offered him shelter."). A plaintiff "must demonstrate that the state acted with the requisite culpability to establish a substantive due process violation under the Fourteenth Amendment. As the Supreme Court has explained, this requires that the § 1983 plaintiff show that the challenged action was so 'egregious' that it can be said to be 'arbitrary in the constitutional sense.'" *Ewolski*, 287 F.3d at 510 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1997)). Because the Court concludes that Plaintiffs cannot meet this demanding standard, the Court will grant Defendants' motions for summary judgment.

To meet the first prong of the state created danger test, Plaintiffs "must show that the state actor increased the risk of harm to the victim—namely, by showing that the government did more than 'merely returning a person to a situation with a preexisting danger.'" *Jones*, 438 F.3d at 695 (quoting *Bukowski v. City of Akron*, 326 F.3d 702, 709 (6th Cir. 2003)). In this analysis, the Court may also consider the extent to which the victim bears responsibility for the risks incurred. *Jones*, 438 F.3d at 694 ("When a victim bears some responsibility for the risks she has incurred, it is even more difficult to say that the 'state' has 'created' the 'danger' to her by its affirmative acts.").

The question is whether Terence Tuckier, Penny Ely, and Charles Nelson were more or less safe on their own than when the officers agreed to escort the ride. Based on the undisputed facts, had the officers not arrived, the motorcycle riders would have left the Holiday Inn, turned right, and proceeded through the same five intersections along the same route as planned (Nelson Dep. 37). Rather than relying on the police escorts, the riders would instead have blocked the

7

intersections themselves and relied on "the good will of other drivers" to stop and let the group pass (Lori Tuckier Dep. 61–62; Nelson Dep. 33).

The officers' arrival and agreement to escort did not increase the risk to those injured or make them more vulnerable to harm. As the convoy proceeded through each intersection, the motorcyclists could see when there was no officer blocking the intersection (Nelson Dep. 53). The motorcyclists could—and before proceeding through at least one intersection did—exercise ordinary caution before proceeding through an unblocked intersection. Nelson and Tuckier both briefly stopped at the Lowe's intersection when they realized it was unblocked and suspected a truck might enter the intersection (Nelson Dep. 63–64). No act of the officers prevented them from exercising that same level of caution as they approached the Black Oak Ridge Road intersection. Indeed, Nelson testified that he did "get out of the throttle a little bit" because he noticed Hammons "looked like he was coming out . . . ." (Nelson Dep. 69). For whatever reason, Tuckier did not slow upon approaching the intersection (Nelson Dep. 69–70). Hammons failed to apprehend the approaching motorcycle, entered the intersection to turn left onto Black Oak Ridge Road, and collided with Tuckier and Ely, killing them both (Nelson Dep. 70; Hammons Dep. 11). The resulting loss of life—though undeniably tragic—does not rise to the level of a constitutional deprivation.

On the undisputed facts, the officers did not create or increase the risk of harm to Tuckier, Ely and Nelson. Plaintiffs have not presented evidence of the requisite culpability required before the Fourteenth Amendment will be construed to hold the state liable for injuries caused by private acts. The state created-danger exception to the *Deshaney* rule does not apply; and the Court will **GRANT** Defendants' motions for summary judgment. Plaintiffs are free to pursue negligence remedies in state court, but this Court will not thrust such remedies upon the

8

state by "expansion of the Due Process Clause of the Fourteenth Amendment." *Deshaney*, 489 U.S. at 203.

IV.     CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' motions (Ely Court File No. 40, Tuckier Court File No. 31) and **DENY** Plaintiffs' motions (Ely Court File No. 30; Tuckier Court File No. 21) in both cases and enter summary judgment in favor of the Defendants.

**An order shall enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**